**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2021 CA 1399

1st CLASS CARE EVERY TIME

VERSUS

THE LOUISIANA DEPARTMENT OF HEALTH

Judgment rendered___**JUL 1 4 2022**___

* * * * *

On Appeal from the
19TH Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C695771

The Honorable Timothy E. Kelley, Judge Presiding

* * * * *

Christopher C. Johnston
St. Francisville, LA

Attorneys for Plaintiff/Appellant
1st Class Care Every Time

Fernin F. Eaton
Baton Rouge, LA

Attorney for Defendant/Appellee
The Louisiana Department of Health

* * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, J.J.

Holdridge, J. Concur.

WRC concurs
by GH

**HOLDRIDGE, J.**

On March 12, 2020, the Division of Administrative Law found that 1st Class Care Every Time (1st Class), violated a policy of the Louisiana Department of Health (LDH) and upheld LDH's decision to recoup $54,643.05 in Medicaid payments from 1st Class. 1st Class filed a petition for judicial review challenging that ruling. The district court affirmed the administrative ruling and dismissed the petition for judicial review with prejudice and 1st Class appealed to this court. For the reasons that follow, we affirm.

The central facts forming the basis for this appeal were stipulated by the parties and the Administrative Law Judge's (ALJ) findings of fact in the adjudication proceeding are not contested in this appeal. 1st Class is a provider of Long Term Personal Care Services (LT-PCS) in the Louisiana Medicaid Program. Jasmine Williams was employed by 1st Class from February 20, 2015 through October 19, 2018. Tyesha Burnett was a Medicaid recipient who received LT-PCS services from Ms. Williams that were billed by 1st Class during that time period. Ms. Williams and Tyesha Burnett were legally married in the state of Florida on February 20, 2015.

The Medicaid Fraud hotline received an anonymous call on June 6, 2018, in which the caller claimed that Ms. Williams and Ms. Burnett were married. An investigation ensued, and it was revealed that Ms. Williams submitted LT-PCS hours almost daily for services she provided to Ms. Burnett both before and after their marriage. During the investigation, 1st Class's owner discovered that Ms. Williams and Ms. Burnett were married and terminated Ms. Williams effective October 19, 2018. 1st Class had no knowledge of Ms. Burnett and Ms. Williams' marriage or relationship when billing Ms. Burnett's LT-PCS to the LDH during the period in question because Ms. Williams and Ms. Burnett actively concealed their marriage

from 1st Class. However, 1st Class was aware of LDH's policy prohibiting a provider from being reimbursed when a spouse of a recipient provides care to a recipient.

On February 6, 2019, 1st Class was informed that LDH intended to recoup $60,160.65, representing the payments made to 1st Class for services provided by Ms. Williams to Ms. Barnett from the date of their marriage through the date on which Ms. Williams was terminated, in violation of its policy prohibiting spouses of LT-PCS recipients from being reimbursed for personal care services they provide to their spouse/recipient. Following an informal hearing, the recoupment amount was reduced to $54,643.05 to reflect the amount of improper billings from June 26, 2015, the date on which the United States Supreme Court declared that same sex marriages must be recognized by all states.[1]

1st Class challenged LDH's decision to recoup the provider payments before the Division of Administrative Law. Following a hearing, the ALJ upheld LDH's recoupment decision pursuant to Chapter 30 of LDH's Medicaid Manuel, which prohibits providers from being reimbursed for Medicaid services that were provided by a recipient's spouse. In upholding LDH's decision, the ALJ stressed that 1st Class stipulated that between February 20, 2015, through October 19, 2018, it billed LDH for LT-PCS services its employee, Ms. Williams, provided to Ms. Burnett, her spouse. Therefore, the ALJ found that 1st Class violated LDH's policy prohibiting a recipient's spouse from being paid for personal care services she renders to the recipient, and as such, LDH's decision to recoup $54,643.05 from 1st Class was proper.

1st Class filed a petition seeking judicial review of the ALJ's ruling in the 19th Judicial District Court for the Parish of East Baton Rouge. Therein, 1st Class argued

---

[1] **Obergefell v. Hodges**, 576 U.S. 644, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015).

that Medicaid regulations require LDH to establish fault on the part of the provider in order to recoup monies billed by the provider for services provided to a Medicaid beneficiary. 1st Class stressed that the ALJ found it did not know of the marriage between its employee and the Medicaid recipient and thus found it to be free from fault. 1st Class argued that because it did not knowingly submit an erroneous claim to LDH, it could not be held liable for the overpayment by LDH. Accordingly, 1st Class asked the district court to reverse the ALJ's March 12, 2020 decision and order LDH to return all monies already recouped from 1st Class with interest as well as costs and attorney's fees.

Following a hearing, by judgment signed on August 17, 2021, the district court affirmed the March 12, 2020 decision of the ALJ and dismissed 1st Class's petition with prejudice. In this appeal from that ruling, 1st Class does not attack the ALJ's factual determinations. Instead, it only argues that the ALJ committed legal error in ordering it to recoup the payments made by LDH for Medicaid services provided by its employee to her spouse. However, after reviewing the administrative record and the appeal record, we find that the ALJ correctly applied the applicable law to resolve LDH's recoupment claim and that the district court properly affirmed that decision. We adopt the ALJ's written ruling as our own in affirming the judgment appealed from.[2] All costs of this appeal are assessed to appellant, 1st Class Care Every Time.

**AFFIRMED.**

---

[2]The ALJ's written reasons for ruling are attached to this opinion.

EAST BATON ROUGE PARISH   C-695771
Filed Apr 13, 2020 8:43 AM   22
Deputy Clerk of Court
E-File Received Apr 09, 2020 12:21 PM

STATE OF LOUISIANA
DIVISION OF ADMINISTRATIVE LAW

| | | |
|---|---|---|
| LOUISIANA DEPARTMENT OF HEALTH | * | DOCKET NO. 2019-9334-LDH |
| | * | |
| | * | |
| IN THE MATTER OF | * | |
| | * | |
| 1ST CLASS CARE EVERY TIME! | * | AGENCY ID. P181138 |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DECISION AND ORDER

1st Class Care Every Time!, a health care provider, requested a fair hearing to challenge the Louisiana Department of Health's (Department) decision to recoup $54,643.05 in provider overpayments for personal care services provided to a recipient by her spouse. The Department's decision is affirmed because 1st Class Care Every Time! violated Department Medicaid rules and policy regarding reimbursement for personal care services provided to a recipient by her spouse.

## APPEARANCES

An in-person hearing was conducted November 19, 2019, in Baton Rouge before Administrative Law Judge Cynthia Eyre. Present at the hearing on behalf of 1st Class Care Every Time! were Christopher Johnston, attorney, and Sarah Cousin, Owner. Present at the hearing on behalf of the Department were Sarah Aycock, attorney, and Annette Passman, Registered Nurse Analyst with DXC Technology (DXC), the Department's fiscal intermediary.

## STATEMENT OF THE CASE

1st Class Care Every Time! (Appellant) requested a fair hearing to challenge the Department's decision to recoup from it the sum of $54,643.05, which the Department claimed Appellant received as the result of committing a violation of the Department policy which prohibits a recipient's spouse from being paid for providing LT-PCS to their spouse. A direct service worker

(DSW) employee of Appellant, Jasmine Williams, and her spouse, the Long-Term – Personal Care Services (LT-PCS) recipient Tyesha Burnett, continued to sign documents and certify that they had no relationship after they married, unbeknownst to Appellant and the Department. Appellant argued that the Department is incorrect for recouping money paid to Appellant as a result of fraud by Ms. Williams and Ms. Burnett.

The Department claims that the regulations require it to recoup the improper payments from Appellant, even if the improper payments were the result of the fraud committed by Ms. Williams and Ms. Burnett.

In advance of the hearing, beginning on October 23, 2019, Appellant's counsel attempted to obtain certain documents from the Department's Custodian of Records to no avail, but Ms. Aycock agreed to compile the documents sought by Appellant and file them under seal in the record of the administrative hearing. The parties agreed to have this Tribunal examine the documents, determine their relevance, and use them in making its decision, without revealing any protected personal information or making the documents public. The Department submitted 73 pages of documents under seal.[1]

This Tribunal ordered the record reopened on February 10, 2020, in order that counsel for Appellant could furnish some information regarding the Medicare Financial Management Manual. The information was produced, and the record closed on February 12, 2020.

This adjudication is conducted in accordance with Louisiana Revised Statutes (La. R.S.) 49:991, *et seq.*, and the Administrative Procedure Act, La. R.S. 49:950, *et seq.*

---

[1] The documents submitted under seal are as follows: LDH Exhibit 1, Medicaid Complaints, 7 pages; LDH Exhibit 2, confirmation email, 5 pages; LDH Exhibit 3, marriage information, 3 pages; LDH Exhibit 4, LaSRS data, 20 pages; LDH Exhibit 5, LTPCS Manual Excerpt, 3 pages; LDH Exhibit 6, 301 letter, 3 pages; LDH Exhibit 7, 301 attachment, 19 pages; LDH Exhibit 8, additional information, 3 pages; LDH Exhibit 9, 303 letter, 2 pages; LDH Exhibit 10, informal hearing request, 1 page; LDH Exhibit 11, notes from informal hearing, 1 page; LDH Exhibit 12, 304 letter, 2 pages; and LDH Exhibit 13, 304 attachment, 14 pages.

2

## JOINT STIPULATION OF FACTS

The parties stipulated to 11 facts:[2]

1. 1st Class Care Every Time is a provider of LT-PCS services in the Louisiana Medicaid Program.

2. Jasmine Williams is a DSW who was employed by 1st Class Care Every Time during the period of February 20, 2015 through October 19, 2018.

3. Tyesha Burnett is a Medicaid recipient who received LT-PCS services billed by 1st Class Care Every Time during the period of February 20, 2015 through October 19, 2018.

4. Jasmine Williams and Tyesha Burnett were legally married in the state of Florida on February 20, 2015.

5. At that time, same sex marriages were not recognized in the State of Louisiana.

6. The United States Supreme Court in the case of Obergefell vs. Hodges, ruled on June 26, 2015, that all fifty states, including Louisiana must recognize same sex marriages.

7. The LDH Medicaid Manual addressing LT-PCS policy prohibits providers from being reimbursed for Medicaid services that were provided by a recipient's spouse.

8. On multiple occasions between February 20, 2015 and October 19, 2018, Tyesha Burnett signed documents for 1st Class Care Every Time in which she asserted that she was not married.

9. LDH, through DXC Technology, sent a 301 Recoupment Letter dated February 6, 2019 to 1st Class Care Every Time, seeking to recoup $60,160.65 for billing for LT-PCS services provided by an immediate family member.

10. An informal hearing was held on May 2, 2019.

11. After the informal, LDH, through DXC Technology, sent a 304 Informal Hearing Results Letter dated June 28, 2019 to 1st Class Care Every Time. The recoupment was reduced to $54,643.05.

---

[2] *See* Joint Exhibit 1.

# FINDINGS OF FACT

DXC is the Department's contractor that receives, investigates, and takes action against providers and other persons for improper payments..[3]

Appellant is a provider of LT - PCS services in the Louisiana Medicaid Program and is owned by the following individuals: Sarah Cousin and her husband, Wendell Cousin; her daughter Wendy Richardson; and her daughter Christina Cousin.[4]

When Sarah Cousin applied to be a provider of LT – PCS in February 2009, she[5] signed a PE-50 Addendum, a part of the Provider Agreement with the Department. By signing this document, Appellant agreed that it would abide by Federal and State Medicaid laws, regulations, and program instructions. Appellant also agreed specifically to conduct its activities/actions in accordance with the Medical Assistance Program Integrity Law (MAPIL) and the Federal False Claims Act and that it is responsible for any and all claims it submits.[6]

Appellant had no knowledge of Ms. Burnett's and Ms. Williams's marriage or relationship, and billed Ms. Burnett's LT-PCS to the Department during the period of February 20, 2015, through October 19, 2018.

Appellant was aware of the policy prohibiting a provider from being reimbursed when a spouse of a recipient provides care services to the recipient, but was not aware that she was doing anything improper because Ms. Williams and Ms. Burnett actively concealed their marriage from Appellant.

On June 6, 2018, DXC's Medicaid Fraud hotline received an anonymous call. The caller alleged that Ms. Williams was the DSW and spouse of Ms. Burnett, and that they were married. DXC noted on its complaint form that Ms. Williams is the DSW for Ms. Burnett, submitting LT-PCS hours almost daily for Ms. Burnett both before and after the date of their marriage .[7]

---

[3] 2018 Legislative Audit of SURS activities in LDH, http://app.lla.state.la.us/PublicReports.nsf/0/6E4D98020230D0378625835A007DE7EA/$FILE/0001AE34.pdf . last reviewed March 12, 2020.

[4] LDH's Exhibit 14, pp. 22-23 and p.25.

[5] 1st Time Care Every Time!, a limited liability company (LLC) is the Appellant, and Sarah Cousin is the owner of Appellant. In this decision, there will be times that Sarah Cousin is acting as the owner and agent of Appellant, and Appellant will be referred to as "Sarah Cousin" in those instances.

[6] LDH's Exhibit 14, p.13, Number 9.

[7] LDH Exhibit 1, p. 1 of 7. (Department's/DXC's Complaint Form).

4

On June 13, 2018, DXC's Surveillance and Utilization Review Subsystem (SURS) Triage member Marilyn Lawrence sent a notice to the Attorney General-Medicaid Fraud Control Unit about the anonymous complaint.[8]

On July 30, 2018, DXC made a visit to Ms. Burnett's home to verify that Ms. Williams and Ms. Burnett were married. Ms. Burnett told DXC's employee, Ms. Clemmons, that she and Ms. Williams were just friends.[9]

DXC discovered from other sources that Ms. Williams and Ms. Burnett were married in Florida on February 20, 2015.[10]

On August 31, 2018, DXC opened an investigation into this matter.[11]

On October 21, 2018, Daryl Derison, an investigator from the Attorney General's office, came to Appellant's place of business to interview Ms. Williams. He learned from Ms. Williams that she and Ms. Burnett were married.[12] Sarah Cousin was present at the interview.[13]

Sarah Cousin did not know that Ms. Williams and Ms. Burnett were married until October 21, 2018,[14] and when she received this information, she terminated Ms. Williams effective October 19, 2018.[15]

On February 6, 2019, DXC sent a letter to Appellant, advising Appellant that the Department intended to recoup $60,160.65,[16] the amount representing payments made to Appellant for services provided by Ms. Williams to Ms. Burnett between February 20, 2015, the date of their marriage, and October 19, 2018.[17]

On June 26, 2015, the United States Supreme Court in the case of Obergefell vs. Hodges, 135 S.Ct. 2584, (2015) ruled on that all fifty states, including Louisiana must recognize same sex marriages. On May 2, 2019, an informal hearing was conducted to address Appellant's request for mitigation of the recoupment amount. After the informal hearing, LDH through DXC

---

[8] LDH Exhibit 1, p. 1 of 7. There is a section at the bottom of this document called "Disposition Summary," which was written by Marilyn Lawrence on June 13, 2018.
[9] *Id.* p. 2.
[10] LDH Exhibit 2.
[11] Department's Pre-hearing brief, p. 2; testimony of Annette Passman.
[12] LDH Exhibit 8, p. 1 of 3; testimony of Sarah Cousin for Appellant.
[13] Testimony of Sarah Cousin.
[14] *Id.*
[15] Appellant found out that Ms. Williams was married to Ms. Burnett on October 21, 2018, a Sunday. She immediately terminated Ms. Williams's employment effective the preceding Friday October 19, 2018.
[16] *Id.* p. 6.
[17] These dates represent the total time that Ms. Williams was employed by Appellant.

5

Technology sent an Informal Hearing Results Letter dated June 28, 2019 to Appellant, advising that the recoupment was reduced to $54,643.05, the amount of prohibited billings from the date *Obergefell* was decided to the date Ms. Williams was terminated from employment with Appellant.

Appellant's DSWs and recipients used a form created by Sarah Cousin when entering and verifying weekly service hours.[18] The name of her form is "Timesheet- Long Term Care."[19] On timesheets representative of all timesheets submitted for 2014,[20] 2015,[21] 2016,[22] 2017,[23] and 2018,[24] Ms. Williams indicated that she had no relationship with Ms. Burnett.

Sarah Cousin conducted in-home supervisory visits of Ms. Burnett's home at least annually.[25] She saw nothing during these visits to suggest that Ms. Burnett was married to Ms. Williams, and had no reason to ask if they were married.[26]

## CONCLUSIONS OF LAW

The Department correctly decided to recoup $54,643.05 from Appellant for the period June 26, 2015, through October 19, 2018.

The Medical Assistance Program (Medicaid) is operated by the Department and is a four-party arrangement involving the taxpayer, the government, the beneficiaries, and the providers.[27] The Department is obligated to ensure Medicaid's fiscal and programmatic integrity.[28] The Department also has the responsibility to ensure that actions brought under the surveillance and utilization review subsystem (SURS) rule are not frivolous, vexatious, or harassing, and Medicaid providers have the responsibility to obey and follow all applicable laws, regulations, policies,

---

[18] Testimony of Sarah Cousin.
[19] Appellant Exhibits pp. 4-8 of 10.
[20] Appellant's Exhibit A, p. 2.
[21] *Id.* at p.3.
[22] *Id.* at p. 4. On the timesheet for the week of May 22, 2016, purportedly a representative example of the timesheets submitted in 2016, the question about a DSW's relationship with a recipient was not answered.
[23] *Id.* at p.5.
[24] *Id.* at p.6.
[25] Testimony of Sarah Cousin.
[26] *Id.*
[27] Louisiana Administrative Code (LAC) 50:I.4101.A.
[28] LAC 50:I.4101.A.1.

6

criteria, and procedures.[29]

The SURS rule was created to (1) establish procedures for conducting surveillance and utilization review of providers and others; (2) define conduct in which providers and others cannot be engaged; (3) establish grounds for sanctioning providers and others who engage in prohibited conduct; and (4) establish the procedures to be used when sanctioning or otherwise restricting a provider and others under the Medicaid program.[30] The SURS rule is also intended to ensure Medicaid's integrity by providing methods and procedures to (1) prevent, detect, investigate, review, hear, refer, and report fraudulent or abusive practices, errors, over-utilization, or under-utilization by providers or others; (2) impose any and all administrative sanctions and remedial measures authorized by law or regulation and which are appropriate under the circumstances; (3) pursue recoupment or recovery arising out of prohibited conduct or overpayments; (4) allow for informal resolution of disputes between Medicaid and providers and others; and (5) establish rules, policies, criteria, and procedures.[31]

The Department is required to review claims submitted by providers before or after payment is made to assure that provider claims are supported by accurate documentation and services are provided in compliance with the requirements of federal laws, federal regulations, state laws, state regulations, policies, criteria, rules, and procedures governing providers.[32] Policies, criteria and procedures are contained in program manuals, training manuals, remittance advice, provider updates, or bulletins issued by or on behalf of the Department.[33]

The SURS rule defines a violation as any practice or activity by a provider, provider-in-

---

[29] LAC 50:I.4101.A.2.
[30] LAC 50:I.4101.B.
[31] LAC 50:I.4101.D.
[32] LAC 50:I.4101.
[33] LAC 50:4147.A.2.b; Provider Agreement; LDH Exhibit 14, pp.13-14.

fact, agent-of-the-provider, affiliate, or other person which is prohibited under the SURS rule.[34]

All violations are subject to recoupment or monetary penalties.[35]

The Personal Care Services Provider Manual states that a provider of personal care services (a DSW) who is a member of the recipient's immediate family must meet the same standards for employment as a DSW as caregivers who are unrelated to the recipient.[36] The policy also provides that a recipient's spouse is prohibited from being reimbursed through the Medicaid LT-PCS Program for providing services to a recipient.[37]

Appellant agreed to abide by Federal and State Medicaid laws, regulations, and program instructions applicable to the provider type for which it is enrolled, and specifically to conduct its activities/actions in accordance with the MAPIL, a statute enacted to combat and prevent fraud and abuse committed by some health care providers participating in the medical assistance programs and by other persons and to negate the adverse effects such activities have on fiscal and programmatic integrity.[38]

The Department's February 6, 2019, letter to Appellant accused Appellant of violating the Department policy which says that spouses of LT-PCS recipients are prohibited from being reimbursed for personal care services they provide to their spouse/recipient.[39] The cited policy is found at Chapter 30 of the Personal Care Services Manual, Section 30.6, issued November 5, 2013, which states in pertinent part:

> The following individuals are prohibited from being reimbursed through the Medicaid LT-PCS Program for providing services to a recipient:
>
> • The recipient's spouse.

---

[34] LAC 50:4103.
[35] LAC 50:I.4145.
[36] LDH Exhibit 5, p. 3 (LDH PCS Provider Manual, Section 30.6, issued November 5, 2013).
[37] *Id.* p. 2.
[38] La. R.S. 46:437.2.
[39] LDH Exhibit 6.

Appellant stipulated that between February 20, 2015, through October 19, 2018, it billed the Department for LT – PCS its employee, Ms. Williams, provided to Ms. Burnett, her spouse.

Because Appellant violated the Department's policy which prohibits a recipient's spouse from being paid for personal care services she renders to the recipient, the Department's decision to recoup $54,643.05 from Appellant is correct.

## ORDER

**IT IS ORDERED** that the Louisiana Department of Health's decision to recoup $54,643.05 from 1st Class Care Every Time! is **AFFIRMED.**

Rendered and signed March 12, 2020, in Baton Rouge, Louisiana.

_____
Cynthia Eyre
Administrative Law Judge

## REVIEW RIGHTS

This decision exhausts your administrative remedies with the Louisiana Department of Health. If you are dissatisfied with this ruling, you have the right to seek judicial review in accordance with Louisiana Revised Statute 49:964(B). Your request for judicial review may be filed in the 19th Judicial District Court, Parish of East Baton Rouge, within 30 days from the date of this certification.

**NOTICE OF TRANSMISSION OF DECISION OR ORDER**

I certify that on _____Monday, March 16, 2020_____, I have sent a copy of this decision/order to all parties of this matter.

_____Clerk of Court_____
**Division of Administrative Law**

9